## ROBERT ADAMS *vs.* ROBERT MACK *et al.*

In an action of trespass, against the selectmen of a town, for causing the goods of the plaintiff to be taken and sold for taxes, a plea justifying the taking and sale of the goods, for the payment of several distinct taxes, was held not to be double.

And where, in such a case, the defendants pleaded, that in 1822 " the town voted " to raise the sum of $2000, for the expenditures of that year," upon demurrer it was held, that the court could not intend, by this allegation, that the money was voted to be raised for necessary town charges ; and the plea was held to be bad.

THIS was an action of trespass, against the defendants, for taking and converting to their own use, the plaintiff's horse.

The defendants pleaded in bar, first, that they were selectmen of Londonderry, for the year 1822 ; that " the town " voted to raise the sum of $2000, for the expenditures of " that year ;" that they duly assessed upon the plaintiff his proportion of the said town tax, and also of the state, county, and school tax ; and that the plaintiff neglecting to pay said taxes, the collector took the said horse, and sold him to pay said taxes.

In a second plea the defendants pleaded, that they were selectmen of Londonderry for the year 1822 ; that the town " voted to raise $2000, for the expenditures of that year ;" and that they duly assessed upon the plaintiff, his proportion of said tax ; and he neglecting to pay the same, the collector took the said horse to pay said tax.

To the first plea the plaintiff demurred, and assigned duplicity as a cause of demurrer.

To the second plea there was a general demurrer.

*Porter* and *Mason*, for the plaintiff.

*Thom* and *Sullivan*, for the defendants.

*Porter*, for the plaintiff.—It does not appear, from the pleadings in this case, that the expenditures, for which the money was voted, were legal expenditures. All the powers of towns, to raise money, are derived from the statute. It will not be contended, that towns possess a general power to raise money, for any and every purpose. They possess the powers, which the statute gives, and no more. They are authorized to raise money for certain definite objects, and for all necessary charges, arising within the towns—and this is the utmost extent of their power, in this respect. For certain purposes then they may, and for certain other purposes

they may not, raise money. Hence it is very obviously necessary, that the purpose, for which money is voted, should appear upon the record of the proceedings. Towns speak by their records. They have no other mode of making known their will. If money be voted to be raised for a purpose not contemplated by the statute—the vote is void. A vote then to raise money for the expenditures of a year, cannot be legal—for money may be expended for illegal, as well as for legal purposes. At least, in these cases, the burthen of proof must rest upon the selectmen, to shew, that the money was voted for legal expenditures. If every thing is to be intended and presumed in favor of selectmen, let it be promulgated, as the law of the land, *that selectmen can do no wrong.* But there is no such legal intendment—no such presumption.

The vote, in this case, cannot be supported under the power to raise money for " all necessary charges arising" within the town. This general expression was not intended to extend beyond the objects before enumerated, or such as might necessarily grow out of those. It cannot be supposed, that the legislature intended, by this clause, to authorize towns to enter into any distinct and independent object of expense, not before enumerated. But in this vote, it is not stated, that the money is raised for necessary charges.

If the defendants intended to rely upon the ground, that the sum voted to be raised was, in fact, for necessary charges, they should have so averred in their plea; and for want of such averment the plea is defective.

Wherever an authority is derived from a statute, the provisions of the statute must be pursued; and he, who exercises the authority, must shew, that he pursued the statute. 1 *N. H. Rep.* 36, *Brown vs. Smith.* This principle not only applies in the case of individuals, but of courts of justice.— " In all instances," says *Lord Ellenborough*, " where juris- " diction is given to inferior magistrates, in certain cases, it " is necessary, that the court should see, that they do not " exceed that jurisdiction." 6 *East* 425. Even the proceedings of the courts of the United States, being courts of limited jurisdiction, have been adjudged erroneous, when

their jurisdiction did not appear on the face of the record.—5 *Cranch* 185.—4 *Dallas* 7.

All the reasoning, which goes to shew the propriety and necessity of holding such a strict watch over courts of limited jurisdiction, applies with equal force to the case of corporations. The officers of corporations, when their conduct is called in question, must shew, that the statutes, under which they have acted, have been substantially followed. *3 Mass. Rep.* 429, *Thurston vs. Little.*—4 *D. & E.* 368, *the King vs. Newcomb.*

The legislature seems to have foreseen the propriety and necessity of restraining towns, in the exercise of their powers, within proper and convenient limits. Not only the subjects, upon which towns may act, but the manner and form of proceeding, are prescribed by statute. Their meetings must be notified in a particular manner; and they can act upon no subject not specified in the warrants, under which their meetings are held. But if towns may vote to raise any sum, they please, " for expenditures," without specifying the nature of the expenditures, for which the money is raised, their powers, in this very important particular, are wholly unlimited. The money being once collected and in the town treasury, under such a vote, what limitation is there to its use? It is the money of the town, and may be expended at the discretion of the town.

The objects, for which towns may raise money, are not very numerous; and there would be no great inconvenience in holding it necessary, that the town officers should keep separate accounts, for each head of expenditure, and be held to apply money, raised for a particular purpose, to that purpose alone. Most of the embarrassments, which selectmen feel in managing the pecuniary concerns of towns, arise from their attempting to be wiser than the law. They often apply money, raised for one purpose, to a very different purpose, and keep no distinct account of any thing. Let money be always raised for specific, legal objects, and be faithfully applied to the objects, for which it is raised, and there would be an end of difficulty and perplexity in selectmen's accounts, and in the pecuniary concerns of towns.

The danger of supplying new and material facts in town records, by legal intendment, is most obvious. To require selectmen to keep strictly within the limits of their power, prescribed by statute, imposes no unreasonable burden, or difficult, or intricate duty ; while it would afford safety to others It would render the breach of duty obvious, and the remedy plain. But, on the other principle, the means of deviating from duty, successfully, would be increased, and the means of detecting the wrong, and punishing the wrong doer, much diminished, if not entirely taken away. It would be subjecting the proof, which town records afford, to explanations and intendments, which would make them mean any thing, rather than what those, who made them, intended. It would enable a majority to cover up their real object, under a vote defining nothing, specifying nothing—to be carried into effect, according to the illegal intention and design—but to be intended by courts to mean all, that is right and legal, and nothing more.

*Sullivan*, for the defendants, contended, that when a town votes to raise money, it is to be intended, that it is raised for a proper and legal purpose, until the contrary is shown ; and that if, in this case, the money was raised for an improper purpose, the plaintiff ought to have alleged that fact in his replication, so that issue might have been taken upon it.

In the case of *Bangs vs. Snow and others*, (1 *Mass. Rep.* 181,) there was a vote as general as in the present case.— The defendants, in that case, were sued as assessors of a parish They justified under a vote to raise " the sum of " $1200, for past charges of the parish," which did not specify what those charges were. The court said, that the presumption was in favor of corporations, as well as individuals, that they did right, until the contrary was shewn ; but they admitted evidence to shew the objects, for which the money was raised

This presumption is reasonable ; for it will very rarely happen, that the majority of the inhabitants of a town will tax themselves for improper and illegal purposes.

Nine tenths of all the votes, passed by the different towns

in the state, are as general, as the present, and do not state the objects, for which the money is raised.

*Mason*, for the plaintiff—said, that the power of the inhabitants of towns, to tax all the property within certain local limits, was a most extraordinary power, and to be safe and useful, ought to be strictly construed. Even when controlled by a strict construction, it might be used oppressively, and individuals find no remedy.

There seemed to be no power to control the expenditure of money, when raised ; and a broad, loose construction of the power of towns, to raise money, might be very dangerous.

He admitted, that the practice of towns had been loose ; but that was no reason, why a dangerous latitude should be sanctioned or indulged.

To vote money for the expenditures of a town, was a very different thing, from voting it for the purposes specified in the statute. The inhabitants ought to have an opportunity to judge, what was necessary for each legal object of expense. They cannot judge by having a sum in gross proposed. To be legal, the tax voted, must be reasonable, or at least it must not be obviously unreasonable. Why has the law specified the objects, for which money may be raised by towns, if no notice is to be taken of those objects, when money is raised ?

" Necessary charges" are charges incidental to the management of the objects, specially mentioned in the statute They are contingent expenses in doing what is authorized. If new objects of expenditure can be introduced, and the inhabitants of towns be the sole judges of their being necessary, then the power of towns to raise money is unlimited.— To raise money for the expenditure of a town is one thing ; to raise it for the necessary charges of a town is another.— Necessary charges have certainly some limitations ; but expenditures have none. A vote to raise money for expenditures, is no more, than a vote to raise money. All money is to be expended in some way.

RICHARDSON, C. J. As duplicity is assigned as a cause of demurrer, to the first plea, we shall consider that objection, before we proceed to examine the matter of the pleas. If

the plaintiff had complained of the taking only, and had alleged no conversion of the horse, it might have deserved consideration, whether a plea alleging a taking for several taxes, must not have been considered as double. But that is not this case. Here the plaintiff alleges a conversion of the property, and the defendants must justify not only the taking, but the sale of the horse, and the detention of money enough, from the proceeds of the sale, to pay the whole sum, they had directed the collector to levy, if he had levied the whole sum. It was therefore necessary, that the defendants should shew, that they had authority to assess the whole sum upon the plaintiff. 2 *Mod.* 177, *Harding vs. Ferne.*—6 *D. & E.* 137, *Moore vs. Beamont*—15 *Mass. Rep.* 144, *Libbey vs. Burnham.*—1 *Burrows* 320.—1 *Chitty's Pl.* 512.—3 *N. H. Rep.* 17, *Brackett vs. Whidden.*—13 *Mass. Rep.* 283.

We are therefore of opinion, that this objection must be overruled.

But it is contended, that it does not appear, by the pleadings in this case, that the town tax was raised for any purpose, for which towns are authorized, by law, to raise money.— This objection goes to the substance of both pleas, and if well founded in fact, must prevail.

It is not to be questioned, that towns derive all their powers to raise money, by taxation, from the statutes ; and when they vote to raise money for purposes not within the intent of the statutes, their votes are void, and afford no justification to their officers, who assess or collect the taxes. And, although we do not think, that a very narrow construction is to be given to the statutes, which confer this power upon towns, but are of opinion, that an interpretation sufficiently liberal to enable towns fully to accomplish all the purposes, for which they were created, is to be adopted ; yet still we have no doubt, that they must be kept within the limits prescribed by law. It will not frequently happen, that towns will be disposed to raise money for improper purposes. But occasions may, and sometimes do, occur, when they are so disposed. When this takes place, individuals, who may be compelled to pay against their wills, are entitled to a remedy. The will of individuals is not, in such a case, to be subjected

to the will of a majority of the corporation, any farther, than it is subjected by law.

It is also very clear, that the doings of towns must be proved by their records. But it seems to us, that it would be extremely mischievous to be very rigorous in the interpretation of those records. They are often drawn up by men, not very well acquainted with what the record should contain ; and not unfrequently by men so little conversant in the business of making records, as not to have at command the language necessary to give the precise meaning intended. A severe interpretation might subject town officers to very great trouble, vexation, and expense, without any advantage to the community, to compensate these inconveniences. It would have no tendency to control towns in the exercise of the power, given them to raise money. For very considerable sums may be legally voted, by towns, for the purposes specifically designated by the statute. And when the money is once in the treasury of the town, it may be voted away for purposes, not within the intent of the statutes ; and individuals, who may be thus aggrieved, seem to have no means of redress. The defect is not in the mode, in which the records of towns may be made, but in the law, which makes no provision to prevent improper expenditures of money belonging to these corporations. It is a defect, which certainly deserves the consideration of the legislature, and which the legislature alone can remedy.

But, however liberally we might be disposed to construe the statute, giving this power, and with whatever indulgence we might think the records of towns were to be considered, a plea in bar must be tested by the known and settled rules of pleading, and by that test must stand or fall.

It is a well settled rule, that a plea, which has two intendments, shall be taken most strongly against the defendant.— This rule is founded upon the very reasonable presumption, that a party, in pleading, will state his case as favourably for himself, as possible. But it must be restricted in its application to pleas, which have two natural intendments. For, if the words of the plea have a natural sense, and also an ar-

tificial one, they shall be understood in the natural sense.— And this is the meaning of the rule, that certainty, to a common intent, is sufficient in a plea.

Thus in trespass, if the defendant plead a release, without saying at what time it was made, it shall be construed to have been made before the trespass was committed. 1 *Chitty's Pl.* 521.—*Comyn's Digest Pleading* [*E.* 6.]

The case of *Dovaston vs. Payne*, (2 *H. Bl.* 527,) was replevin for taking cattle. There was an avowry, that the defendant was seized of the *locus in quo*, and took the cattle damage feasant. The bar to the avowry was, that the *locus in quo* lay contiguous to a highway, and that the defendant was bound to repair the fence between the *locus in quo*, and the way, and that the cattle, being in the highway, strayed into the close through defect of fences. To this plea, there was a special demurrer. As it is a rule of law, that the owner of a close is only bound to fence against cattle, which are lawfully in the adjoining ground, the question was, whether, by the allegation. that the cattle were in the highway, the court could intend, that they were lawfully there. All the judges agreed, that they could not ; and *Buller, J.* said, that he thought the doctrine of certainty to a common intent could not support the plea ; that was a rule of construction and not of addition, and could not add, to a sentence, words, which were omitted.

These principles, which are well settled, may be easily applied to the pleas now before us. The defendants attempt to justify the taking of the plaintiff's property by their warrant, to satisfy a tax voted to be raised by the town of Londonderry. But the authority of towns to raise money, by taxation, is limited to a very few objects ; and it is certain, that no vote of a town, to raise money in that way, can justify its officers in collecting it, unless it be voted to be raised for a lawful purpose. If then it does not appear by these pleas, that the tax was voted for such a purpose, they must be adjudged insufficient. The allegation, upon which the counsel of the defendants rely, as shewing that the money was raised for a lawful purpose, is, that the town *voted to raise the sum of*

*two thousand dollars for the expenditures of that year.* The word *expenditures* is entirely equivocal and may, in its natural sense, signify as well the application of money to purposes, for which towns have not authority to raise money, as to purposes, for which they have such authority. And, by the rule above stated, we cannot understand by this allegation, that the money was voted to be raised for a legal purpose : and the pleas must be adjudged insufficient.