## *Stevens v. Dennett.

A was the owner of adjoining farms, Nos. 1 and 2. Upon No. 2 was a well, from which B, occupying No. 1 by permission of A, with the understanding that he would subsequently purchase it, was accustomed to draw water for use upon the premises. This occupation continued thus by permission about eighteen years, when B acquired a legal title thereto by purchase. In these circumstances he drew water at his pleasure from the well for more than twenty years, when such use of the well was forbidden and interrupted by C, who had purchased No. 2. *Held,* that B had acquired no title to the use of the well by twenty years' enjoyment thereof.

Where the plaintiff brought an action for the interruption of the enjoyment of a well, as an easement appurtenant to his estate and possession,— *held,* that it was not competent for him to show that the same well had been used for sixty years as a public watering place.

Where a party voluntarily testified that he was not present at the execution of a deed of certain premises to the other party,—*held,* that. it was competent for the other party, upon exhibition of the deed, to inquire of him whether he signed it as a witness.

If a party claiming the right to the use of a well situated upon premises about to be conveyed by deed, being present at the execution of the deed and understanding its contents, signs the same as a witness thereto and does not disclose to the purchaser the fact that he had any claim to the use of the well, and if the purchaser, being ignorant of the party's claim, would not have purchased if he had known thereof, the party will not be permitted, in an action against the purchaser, to set up his.claim to the use of the well, even though his omission to disclose the same was only an act of gross negligence, and not of bad faith.

The distinction between an equitable and a legal estoppel by matter *in pais* commented upon.

THE WRIT, by Jeremiah E. Stevens against Charles E. Dennett, was dated December 3, 1870. The declaration contained two counts in case and one in trover. The first count in case alleged, in substance, that the plaintiff was seized and possessed and was entitled, in common with the defendant, to a certain well within the limits of the highway; that the plaintiff, and the previous holders and occupants of the

---

* The opinion in this case was delivered December term, 1872, but, for the sake of more convenient reference, I have procured its publication in the same volume with *Horn* v. *Cole, ante,* page 287.     REPORTER.

farm on which the plaintiff now lives, had occupied and used the said well, as appurtenant to said premises, for the purpose of supplying the same with water for upwards of twenty years last past; that the said plaintiff ought to have and hold the same, free and undisturbed, in common with the defendant, but that the defendant prevented the plaintiff from using the well for the purpose of supplying his said premises with water. The second count in case alleged, in substance, that the plaintiff was possessed and entitled to the use, in common with the defendant, of said well, and ought to have for himself and family, at all times in the year, free use of the same in common with the defendant, but that the defendant, by certain acts, deprived the plaintiff of the use of the same in common with the defendant. The count in trover alleged that the plaintiff was possessed of a right, in common with the defendant, of a well-curb, a bucket, fifteen feet of trace chain, a rope, and a well-house, and that the defendant converted the same. Plea, the general issue.

It appeared that the well in question was situated in the highway between the travelled part of the highway and the wall of the defendant's field. The plaintiff, upon cross-examination, admitted that the well was upon the defendant's farm. The plaintiff's evidence tended to show that he had occupied, ever since March, 1850, a farm adjoining the farm now owned by the defendant; that immediately prior to the plaintiff's going into possession, his father, John Stevens, owned both farms; that John Stevens continued to own the farm now occupied by the defendant until April 6, 1852; and that the plaintiff had no paper title to his present farm until he received a deed from the administratrix of John Stevens's estate in 1860. Subject in part to the defendant's exception, the plaintiff testified, in substance, as follows : " When I went into possession, I bought of my father,—to pay one half of what he had paid, and he to give me the other half. I was to give him six hundred dollars; and I entered into possession under that arrangement. He never deeded to me. I held under him ten or twelve years. Never paid him any rent. Any payments I made were to go towards the six hundred dollars. I claimed the property as mine during that time, and paid the taxes. I claimed to own the place after I entered on it." The plaintiff admitted that he had not paid the whole of the agreed price prior to his father's death. It appeared that the deed received by the plaintiff from the administratrix of John Stevens recited a sale at auction under a license, and contained the following description : All the right, title, and interest said J. Stevens had at the time of his death in and to the farm on which said J. E. Stevens now lives, subject to whatever right and claim the said J. E. Stevens has in and to the same by virtue of the following clause in said J. Stevens's last will and testament, viz.,—" I give and bequeath unto my eldest son, J. E. Stevens, the sum of seven hundred dollars out of the farm on which the said J. E. S. now lives, or one half of said farm," being the same deeded to said J. Stevens by Morgan Bissell, by his deed dated May 12, 1849.

The plaintiff's testimony tended to show that Morgan Bissell, the former occupant of the plaintiff's farm, used the water of the well whenever he had occasion, for several years prior to the plaintiff's occupancy; and that the plaintiff had done so under a claim of right, from March, 1850, up to the obstruction by the defendant in the summer of 1870. The plaintiff testified that Bissell and he had water brought to their premises from another source through logs; that they used to resort to this well for water whenever they had trouble with the logs; and that the plaintiff entirely gave up the use of the logs about 1856.

The plaintiff offered to show that the well was used for sixty years as a public watering place (there being a trough there and an open bucket); but the evidence was excluded, subject to exception.

The court ruled that the plaintiff had not shown title by twenty years' user, and that he could not recover for interruption of the user by the defendant. To this ruling the plaintiff excepted. The jury found specially, in answer to a question submitted by the court, that John Stevens did not, prior to April 6, 1852, agree with the plaintiff that the farm should belong to the plaintiff before the plaintiff had paid the price asked by John.

The plaintiff's evidence tended to show that the plaintiff, in connection with previous occupants of the farm now owned by the defendant, had erected a well-house and put in a chain and bucket; and that the defendant subsequently converted them. The well was operated by a windlass; the well-house was constructed, and the chain and bucket annexed, in the usual manner. It appeared that the defendant purchased his farm of Lebbeus Hall, May 2, 1868. The defendant, without objection, asked the plaintiff whether he was present when the deed from Hall to the defendant was made; and the plaintiff answered that he was not. Thereupon the defendant produced the deed, and proposed to exhibit it to the plaintiff and ask him whether he signed it as a witness. Subject to exception, this was allowed.

It appeared that the deed from Hall to Dennett was executed in the presence of the plaintiff, who was one of the attesting witnesses; and that the plaintiff did not, at that time, disclose to the defendant that he had any claim to the use of the well or to any of the fixtures connected therewith.

Upon the question whether the plaintiff knew the contents of this deed at the time of its execution, the evidence was conflicting.

The plaintiff claimed that the well-fixtures were not permanent fixtures; and asked the court to charge that if the bucket, chain, and rope were merely annexed by tying or the like, and could be removed without injury to the permanent fixtures, without damage, and were put there by the plaintiff without an intention of having them become annexed permanently to the freehold, they remain personal property, and would not pass with the land, although the plaintiff may be estopped from setting up a permanent easement. The court declined so to instruct the jury, but instructed them that, as between Hall and Dennett, the

deed would convey the well-fixtures sued for in the count in trover. The jury were instructed, in substance, that the plaintiff was entitled to recover under the count in trover for any of the articles belonging to him and converted by the defendant, unless he was estopped by what took place at the execution of the deed ; that the plaintiff was estopped if he knew the contents of the deed, and the defendant was ignorant of the plaintiff's claim to the fixtures, and would not have purchased if he had known of the claim.   The plaintiff excepted to the instructions given, and to the refusal to give the instructions asked for.

The jury returned a verdict for the defendant, and found specially that the plaintiff's failure to disclose to the defendant his claim to the fixtures was an act of gross negligence, but not of bad faith.

The following question was submitted to the jury : What was the value of any well fixtures put in by the plaintiff, and converted by the defendant to his own use ?

Answer—One well-house, $2.50 ; one chain, $1.25 ; one bucket, 50 cents; total, $4.25.

The plaintiff moved to set aside the verdict by reason of the foregoing exceptions.

It was agreed that judgment be rendered for the plaintiff for four dollars and twenty-five cents, if he is entitled thereto upon the foregoing statement.

The case was reserved.

*Fletcher & Heywood* and *Aldrich,* for the plaintiff.

1. The plaintiff had used the water of the well under a claim of right, from March, 1850, to the time he was obstructed by the defendant in the summer of 1870.   This we contend makes out an adverse enjoyment, or the exercise of a privilege or easement, against the defendant, which is good in law and establishes his right.   The enjoyment was open.   *Tickle* v. *Brown,* 4 Ad. & E. 369.   It was continued and uninterrupted ; and it was adverse, as stated in the first paragraph in this brief, under a claim of right, which is the meaning of adverse. *Sargent* v. *Ballard,* 9 Pick. 251.   *Powell* v. *Bagg,* 8 Gray 441, is strong for the plaintiff.   We say that when the court ruled the plaintiff had not shown title by twenty years' user, and that he could not recover for the interruption by the defendant, it was erroneous, for the reason that the case finds that there was testimony to show that the plaintiff used the well more than twenty years under a claim of right, and that it was not necessary that he should prove any title, for that was for the jury to pass upon.   It was of no consequence when the plaintiff bought his farm ; he was in possession, and claiming a right to use water from the well, and did so continually for more than twenty years before the interruption.   There was no evidence to show it was by permission, and much to show it was by right, such as joining with the three owners of the defendant's farm in repairing and fixing the well from time to time.

2. We contend the evidence offered to show that the well, &c., had

been used as a public watering place was improperly rejected. Such right cannot be defeated by the owner in fee, whether it was gained by prescription or dedication. *Taylor* v. *Public Hall Co.*, 35 Conn. 430. If it was a public watering place, and the defendant prevented the plaintiff from exercising the right, he is liable in this action. *Fineux* v. *Hovenden*, Cro. Eliz. 664; Co. Lit. 56.

The plaintiff had a special damage and grievance,—the loss of the well fixtures by the defendant converting them.

3. In regard to the bucket, rope, and chain, we would say that if the plaintiff and defendant each had an interest in them, and the defendant converted them, he would be liable in trover for the plaintiff's share—*Vickery* v. *Taft*, 1 D. Chip. 241; 21 Vt. 204; *White* v. *Brooks*, 43 N. H. 402—unless they were fixtures, and passed by the deed; and whether under the circumstances they were fixtures or not, we submit to the court.  •

To change a chattel into a fixture requires a positive act on the part of the party making the annexation, and his intention so to do must clearly and fully appear. *Hill* v. *Wentworth*, 28 Vt. 428. And there is much doubt whether there was such a physical connection with the realty as to change their character. If they were placed there with the concurrence of the owner in fee, could he disannex them and rightfully convert them to his own use? *Woodbury* v. *Parshley*, 7 N. H. 237; *Bridge* v. *Bragg*, 11 N. H. 102. Was it the intention of the parties, at the time of the annexation, that they should be a permanent accessory to the freehold and a parcel of it?

4. On cross-examination, the plaintiff was asked if he was present at the execution of the deed to the defendant, and he said he was not; and the defendant produced the deed, and asked him if he signed it. This ruling we say was wrong—contrary to *Queen's case*, 2 Brod. & Bing. 283, and all well considered cases since.

5. In regard to the supposed estoppel, we say, that in order to create an estoppel *in pais*, the declarations or acts must have been accompanied by design to induce the party who sets up the estoppel to act upon it. *Andrew* v. *Lyons*, 11 Allen 349, and authorities cited. The fact that the plaintiff witnessed the deed lacks the vital elements of an estoppel. The case finds that even the evidence as to whether the plaintiff knew the contents of the deed was conflicting. There must be a design to mislead. There must be a wilful intent or some bad design; but the case repels this by expressly finding that there was no bad faith. *Plumer* v. *Lord*, 9 Allen 455, and authorities cited; 28 Me. 525.

*Barker*, for the defendant.

The ruling that the plaintiff had not acquired title by twenty years' user was correct. All the right the plaintiff had was a mere parol license from John Stevens, which was revocable, and was revoked by the sale by John Stevens to the grantor of the defendant. To acquire title, the twenty years' user must be adverse and uninterrupted, and not by

consent; and in case of an easement, by one owning the premises to which the easement is claimed to be appurtenant.    2 Greenleaf's Evidence, secs. 539, 539 a, and 545.   Wallace v. Fletcher, 30 N. H. 434; Watkins v. Peck, 13 N. H. 370.

The plaintiff's knowledge of the conveyance to the defendant was material, and his being present when the deed was made tended to show his knowledge.   For the same purpose it was competent to show that he witnessed the deed.   The plaintiff was a witness, and the exhibiting the deed to him was the proper practice.   1 Greenleaf's Evidence, secs. 463–465.

Whether the public had rights in the well or not was immaterial, and not declared for.   If Bissell had acquired an easement in the well, it became merged when John Stevens became the owner of both farms. 2 Washburn on Real Property 25, 2d ed.; Hopkinson v. Dumas, 42 N. H. 296.

As between Hall and Dennett, the well fixtures passed to Dennett as permanent fixtures.   Wadleigh v. Janvrin, 41 N. H. 503.

The ruling on the question of estoppel was correct.   The plaintiff, by his conduct and gross negligence, induced the defendant to purchase when he otherwise would not have done so, and the plaintiff is estopped. Odlin v. Gove, 41 N. H. 465; Watkins v. Peck, 13 N. H. 373; Heath v. Derry Bank, 44 N. H. 178; Davis v. Handy, 37 N. H. 65; Simons v. Steele, 36 N. H. 73.

FOSTER, J.    I. The plaintiff's claim to recover damages upon the first two counts in his declaration rests upon an alleged prescriptive right to the use and occupation, in common with the defendant, of the well located upon the premises of the latter.

Prescription may be defined to be—A title acquired by possession had during the time and in the manner fixed by law.   " Prescriptio est titulus ex usu tempore substantiam capiens ab authoritate legis."   Co. Litt. 113 b.    After the lapse of the requisite period, the law adds the right of property to that which before was possession, or, in the case of things incorporeal, a quasi possession only.   Gale on Easements *86; Wallace v. Fletcher, 30 N. H. 434.

The manner fixed by the law for the establishment of a prescriptive right to an easement, is by open adverse enjoyment of the right, as an easement and as of right, without interruption, for the full period of twenty years.   Gale on Easements *88, *99.

If, therefore, there has been a breach in the continuity of the enjoyment, as of right or as an easement, as where a unity of possession and of ownership occurs at any time during the period, then, although the actual user continues, the continuous user, as of right and as an easement, has been broken, and the title fails; for, from the very definition of prescription, an enjoyment, in order to confer a title, must have been uninterrupted, both as to the manner and during the time required by law.   Gale on Easements *87, *88; Monmouthshire Canal Co. v. Harford, 1 C. M. & R. 631; Onley v. Gardiner, 4 M. & W. 499.

In *Mounsey* v. *Ismay*, 3 Hurlstone & Coltman 486, an easement is said to be a privilege which one neighbor hath in the land of another as appurtenant to his land ; whence it was holden, that a custom for the inhabitants of a town to hold races over land is not an easement, and cannot be prescribed for.

" Easements," says Washburn, " answer to the predial servitudes of the civil law, and consist of a right in the owner of one parcel of land, by reason of such ownership, to use the land of another for a special purpose not inconsistent with the general property of the owner. The parcel to whose ownership the right is attached is called the dominant, while that in or over which the right is to be exercised is called the servient estate." 2 Washburn on Real Prop. 275, *25 ; Washburn on Easements 5. " There must be two distinct tenements,—the dominant, to which the right belongs ; and the servient, upon which the obligation is imposed." Gale on Easements 5 ; *Mounsey* v. *Ismay*, above cited.

These elementary definitions of prescription and easement being kept in view, the question before us is readily disposed of.

Prior to April 6, 1852, John Stevens, under whom the plaintiff claims title, was the owner in fee both of the plaintiff's and of the defendant's farms. Until that time the plaintiff occupied his present farm by the permission of his father, John Stevens. He had no title nor right there except as a tenant at will or at sufferance, there being no agreement between the plaintiff and his father that the farm should belong to the plaintiff before he had paid the price required by his father. Possession of land, under an agreement to purchase it, is not adverse until full payment according to the agreement. *Drew* v. *Towle*, 30 N. H. 531. Occupying thus, he took water from the well, by the license and permission of the owner of the well. He acquired by this license no greater right than his father had, who gave the license, namely, a right, by unity of possession and title, to draw water from his own well.

No man can have an easement in his own land. If the dominant and servient tenements are the property of the same owner, the exercise of the right, which in other cases would be the subject of an easement, is, during the continuance of his ownership, one of the ordinary rights of property only, which he may vary or determine at pleasure, without in any way increasing or diminishing those rights. The dominant and servient tenements must, therefore, belong to different persons ; immediately they become the property of one person, the inferior right of easement is merged in the higher title of ownership. Gale on Easements 14 ; *Holmes* v. *Goring*, 2 Bing. 83.

The permissive use of the water by the plaintiff prior to April 6, 1852, was therefore not adverse, but by license and indulgence ; and if in any sense it might be regarded as appurtenant to the parcel of land occupied by the plaintiff, it was in no possible sense a right exercised or claimed as a predial service ; it was not a user as of right nor as an easement, and so it was not prescriptive. Possession of land by

consent of the true owner is not adverse possession. *Atherton* v. *Johnson*, 2 N. H. 31 ; *Drew* v. *Towle*, 30 N. H. 531.

Notwithstanding the plaintiff's previous possession and user, prescription did not commence until the unity of title and possession was dissolved by the sale to the defendant's grantor in 1852, since which time twenty years had not elapsed when the present suit was brought. The two years of the plaintiff's permissive occupation and user prior to April, 1852, cannot be added to the subsequent user in order to make up the period of twenty years and so to perfect his prescriptive title, because the user during those two years was not of the privilege as of right or as an easement, being under license from the owner of the joint estates. See *Sargent* v. *Ballard*, 9 Pick. 251, 254.

*Tickle* v. *Brown*, 4 Ad. & E. 369, cited by the plaintiff, fails to afford him the support claimed from it. That case was subsequent to Lord Tenterden's act, or "the prescription act" of 2 and 3 Wm. IV, ch. 71, which was not intended to supersede the common law with regard to the method of acquiring an easement, but was designed mainly to obviate the difficulty which arose from showing the actual commencement of an enjoyment within the time of legal memory. And the only material change made by the act, pertinent at all (if the act were at all pertinent, as it is not) to the present inquiry, is, that whereas, by the common law, any user during the prescriptive period by the parol license of the owner of the servient tenement would defeat the prescription,—by the act of Wm. IV the right derived from enjoyment for the full period of sixty years "shall be deemed absolute and indefeasible, unless it shall appear that the same was taken and enjoyed by some consent or agreement expressly made or given for that purpose, by deed or writing ;" which provision of the statute involves the consequence that an enjoyment, under the statute, may, in the case of a written license, be as of right and as an easement, though permissive, unless the claimant, by asking for permission during the period, admits that he has then no right, and so breaks the continuity of the enjoyment for the whole period." See Gale on Easements *97–*100 ; *Tickle* v. *Brown*, before cited.

In the case before us, the very commencement of the user, from which the plaintiff claims a prescriptive right, was by parol license merely. Such was the character of the user for two years, when this license was revoked by the sale of the servient tenement to the defendant's grantor, without reservation of any right or easement therein. " A license is not a grant, but may be recalled immediately," said Lord ELLENBOROUGH, in *The King* v. *The Inhabitants of Horndon on the Hill*, 4 M. & S. 565.

An easement can never be created by parol. *Hewlins* v. *Shippam*, 5 B. & C. 221, where the authorities are reviewed ; Shepherd's Touchstone 231. " Whatever doubts may formerly have existed as to the creation of easements by express agreement, it seems to be now fully settled that, like all other incorporeal hereditaments, they can be created only by an instrument under seal. Gale on Easements *19.

It is therefore quite unnecessary to apply to this case any absurd fiction, or presumption, whereby, after an occupation or user of twenty years, a lost deed is said to be inferable, and required to be inferred by judges and juries who know very well that no deed was ever lost or made, because, upon the plaintiff's own showing, the commencement of his alleged prescription was not by deed or grant, but by verbal license.

Neither is it necessary nor possible to apply to the case the rule of law, which, independent of any consideration of a presumption of law or fact, has become so firmly established in this country as to have equal authority with a positive statute, that an adverse, exclusive, and uninterrupted enjoyment for twenty years of an incorporeal hereditament, confers a right as effectually as if the same were derived from a deed not lost, nor presumed ever to have existed ; because we have conclusively shown that the plaintiff's user and enjoyment of the privilege during the whole period of twenty years was neither adverse, exclusive, nor uninterrupted.

It does not appear from the case how long Bissell, the former occupant of the plaintiff's farm, had used the well, nor is it material, for, even if Bissell had acquired a prescriptive right to an easement therein, it became merged in the higher title of John Stevens, by unity of ownership and possession.

II. The plaintiff was not permitted to show that the well was used for sixty years as a public watering place (there being a trough there and an open bucket). The ruling of the court in this particular was correct.

The use by the public of a spring, for the purpose of watering horses and other cattle, may have ripened into a right, resembling an easement in its mode of enjoyment; but as the existence and validity of such a right depend generally upon some local custom, as suggested in the case before us, quite independent of any express or implied agreement, or grant, or presumption, and excluding the operation of the general rules of law applicable to easements, such proof can but be irrelevant in support of a claim founded solely upon an easement appurtenant to the estate and possession of the claimant. *Tyson* v. *Smith*, 6 Ad. & E. 745; *Mounsey* v. *Ismay*, before cited; Gale on Easements *14, *99.

It is, moreover, a sufficient answer to the plaintiff's exception, in the present case, to suggest that he has not brought his action for the disturbance of any such right, and the defendant could not be expected to be prepared, under this declaration, to meet any such proffered evidence.

III. It was competent, material, and important, as tending to lay the foundation of an estoppel, to show that the plaintiff was present when the deed from Hall to the defendant was executed, and that he knew and understood the contents of the deed.

Having testified, without objection, that he was not present, it was clearly competent for the defendant to exhibit for his inspection the

deed bearing his name, as an attesting witness, either for the purpose of refreshing his recollection, testing the strength of his memory, or his confidence in his assertion.    1 Greenl. Ev., secs. 463, 465, 466.

We understand such a question as was admitted in the present case, accompanied by the exhibition of the deed to the witness, to be in accordance with common practice ; and we are unable to discover that it comes in conflict at all with the rules laid down in the *Queen's case*, 2 Brod. & Bing. 284.

IV. The instructions to the jury, with regard to the effect of the plaintiff's silence and conduct at the time of the execution of the deed from Hall to the defendant, were fully in accordance with the rules applicable to the question of estoppel, in like circumstances.

" The rule of law is clear, that where one, by his words or conduct, wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is precluded from averring against the latter a different state of things, as existing at the same time." Lord DENMAN, C. J., in *Pickard* v. *Sears*, 6 Ad. & E. 469.

This preclusion is by operation of what is strictly and most properly called an *equitable* estoppel, and not a *legal* estoppel by matter *in pais*,— the latter being enforced from considerations of public policy, though in some instances subversive of the equity of the particular case ; and hence such estoppels have been said to be *odious*, and to demand a strict construction.    But an equitable estoppel is not odious, and is intended to promote and effectuate equity.

It will be found that great confusion has resulted from oversight of the plain distinction existing between a legal estoppel, founded upon and administered according to strict and technical rules, regardless of the equity of the particular case, and an equitable estoppel, adopted for the very purpose of preventing a party, contrary to the equity of the particular case, from setting up technical legal rules in subversion of that equity.    See *Drew* v. *Kimball*, 43 N. H. 282, and *Horn* v. *Cole*, 51 N. H. 287.

We are considering now a pure equitable estoppel, the principles of which are oftener applicable to estoppels by conduct, as in this case, than to estoppels by reason of express declaration.

The jury were instructed that the plaintiff was estopped if he knew the contents of the deed, and the defendant was ignorant of the plaintiff's claim to the fixtures, and would not have purchased if he had known of the claim.

The jury found specially that the plaintiff's failure to disclose to the defendant his claim to the fixtures was an act of gross negligence, but not of bad faith.

According to very common definitions, the elements essential to an estoppel by conduct are (1) a *representation* or a *concealment* of material facts ; (2) the representation must have been made with *knowledge* of the facts ; (3) the party to whom it was made must have been *ignorant of the truth* of the matter ; (4) it must have been made with

the *intention* that the other party should act upon it; and (5) the other party must have been *induced to act* upon it.

And the term " representation " here employed is used, for convenience, to indicate active and passive conduct, words and silence, acts and concealment. Bigelow on Estoppels 480.

The charge to the jury and the verdict rendered thereupon involve the fact that the jury found the first of these conditions, namely, the concealment ; the second, namely, the plaintiff's knowledge ; the third, namely, the defendant's ignorance ; and the fifth, namely, the change of the defendant's position, by reason of the inducement afforded by the plaintiff's conduct.

As to the other essential element of the estoppel—the intention—the jury have found, specially, an act of gross negligence, and the absence of bad faith on the part of the plaintiff.

By the terms of Lord DENMAN's definition, the representation or concealment must be wilful, in order to the establishment of the estoppel ; and a wilful concealment would be essential to fulfil the requirement of the fourth and only remaining condition essential to the establishment of the estoppel.

A wilful concealment would evidently indicate the intention to induce the defendant's action.

In *Freeman* v. *Cooke*, 2 Ex. 654, the term *wilful* received this construction by PARKE, B., namely,—" Conduct by negligence or omission, where there is a duty cast upon a person ·by usage of trade or otherwise to disclose the truth, may often have the same effect " as a wilful representation. Why? Because it is equitable that it should have the same effect.

In *Cornish* v. *Abington*, 4 Hurl. & N. 549, POLLOCK, C. B., says,— " Lord WENSLEYDALE [formerly Baron PARKE], in *Freeman* v. *Cooke*, commenting on the earlier case of *Pickard* v. *Sears*, pointed out a limitation of the application of the rule, viz., that ' in most cases to which the doctrine of *Pickard* v. *Sears* is to be applied, the representation is such as to amount to the contract or license of the party making it.' No doubt, unless the representation amounts to an agreement or license, or is understood by the party to whom it is made as amounting to that, the rule would not apply ; but although the case of *Freeman* v. *Cooke* limited the application of the rule to this extent, the court point out that the word ' wilfully,' in the rule as laid down in *Pickard* v. *Sears*, means nothing more than ' voluntarily.' Lord WENSLEYDALE, perceiving that the word ' wilfully ' might be read as opposed not merely to ' involuntarily ' but to ' unintentionally,' showed that if the representation was made voluntarily, though the effect on the mind of the hearer was produced unintentionally, the same result would follow." The learned chief baron then proceeds to declare the true rule in the following language : " If any person, by a course of conduct or by actual expressions, so conducts himself that another may reasonably infer the existence of an agreement or license, whether the party intends that he should do so or not, it has the effect that the party using

that language, or who has so conducted himself, cannot afterwards gainsay the reasonable inference to be drawn from his words or conduct.

It would seem to be hardly necessary to call in aid of the application of the principles of an equitable estoppel *in pais*, the proposition that a party has so conducted as to give the other party a *legal license* to do a thing.

We find it indeed asserted in this case of *Cornish* v. *Abington*, and many other cases, but, with submission, it seems to me an unnecessary interpolation, serving only to confound the distinction to which I have already alluded.    It strikes me it were much better to say in fewer words, —A party who negligently or culpably stands by and allows another to contract on the faith and understanding of a fact which he can contradict, cannot afterwards dispute that fact in an action by or against the person whom he has himself assisted in deceiving.

Such indeed was substantially the rule laid down by Lord DENMAN himself, in *Gregg* v. *Wells*, 10 A. & E. 90, subsequent to the case of *Pickard* v. *Sears*, and serving to define and explain the rule as declared in that case.

In *Manufacturers &c. Bank* v. *Hazard*, 30 N. Y. 226, the court held that it was not necessary to the estoppel that the party against whom it had been alleged should have designed to mislead.

The foregoing and many other cases are reviewed and commented upon by Bigelow, in his work on Estoppels, pp. 552–560, and the conclusion of the author is to the effect that gross negligence is equivalent to wilful or intentional concealment.    And see Benjamin on Sales 39.

This limitation or explanation of the principle declared in *Pickard* v. *Sears*, is fully indorsed by BELLOWS, J., in *Odlin* v. *Gove*, 41 N. H. 465, at p. 473, where the language of Judge STORY, in his 1 Eq. Jur. 386, is approved, viz.,—" To justify the application of this cogent moral principle, it is indispensable that the party so standing by and concealing his rights should be fully apprised of them, and should, by his conduct or gross negligence, encourage or influence the purchase ;—for, if he is wholly ignorant of his rights, or the purchaser knows them ; or if his acts or silence or negligence do not mislead, or in any manner affect the transaction,—there can be no just inference of actual or constructive fraud on his part."

In the preceding section, Judge STORY, as an example of an equitable estoppel, instances the case of a man standing by and seeing another execute a deed of conveyance of land belonging to himself, and, knowing the facts, signing his own name as a witness to the deed.

And in *Odlin* v. *Gove* it was holden, that whether the party has used reasonable diligence, and whether the person against whom the estoppel is set up has given reasonable notice of his claim, are questions for the jury.    See, also, *Simons* v. *Steele*, 36 N. H. 73, 79 ; *Davis* v. *Handy*, 37 N. H. 65 ; *Foster* v. *Bigelow*, 24 Iowa 379 ; *Martin* v. *Zellerbach*, 38 Cal. 300.

Indeed, the doctrine seems to be well established by authority that

the conduct and admissions of a party operate against him in the nature of an estoppel, wherever, in good conscience and honest dealing, he ought not to be permitted to gainsay them. Thus, negligence becomes constructive fraud,—although, strictly speaking, the actual intention to mislead or deceive may be wanting, and the party may be innocent, if innocence and gross negligence may be deemed compatible ; and in such cases the maxim is justly applied to him, that where one of two innocent persons must suffer, he shall suffer who by his own acts occasioned the confidence and loss. The application of the maxim to the case before us is obvious. The principle involved in it is kindred to that of an equitable estoppel, the difference being that the application of the estoppel, instead of the maxim, avoids the loss to the innocent party who has been misled by the conduct of another. See 1 Story's Eq. Jur., secs. 387, 389 ; *Lucas* v. *Hart*, 5 Iowa 415 ; *Commonwealth* v. *Moltz*, 10 Pa. St. 527, 531 ; *Smith* v. *McNeal*, 68 Pa. St. 164.

We are inclined to adopt the views expressed in the cases which we have referred to, as representing the just and reasonable interpretation of the general rule with regard to estoppels by silence or conduct, and to hold that the instructions to the jury in the present case were correct and sufficiently explicit, and that the verdict places the plaintiff in the position required by all the conditions of the rule.

As between Hall and the defendant, the deed was unquestionably sufficient to convey the well and fixtures ; and it was, as the jury have found under proper instructions, gross negligence on his part to have been silent with regard to his understanding and claim concerning them.

The result of all these considerations is, that there must be

*Judgment on the verdict.*