Dec. 23, 1875.                    PITTSBURG *v.* DANFORTH.

*Requisites of articles in warrant for town-meeting—Vote for the payment of bounties—Commutation money—Collector—Estoppel.*

The object of specific articles in a warrant calling a' town-meeting is, to give information to the voters of the subject-matters to be acted upon in the meeting, so that the voters may be enabled to act deliberately and intelligently.

The subject-matter intended for action, being plainly referred to in the warrant, authority is conferred upon the meeting to act upon minute specifications and particulars included, and necessarily involved in that subject-matter. The specifications thus involved need not be enumerated in particular terms.

The fourth article in the warrant for a town-meeting was, "To see what sum of money the town will vote to pay, in addition to the sum already raised, as bounty to all the men drafted into the service of the United States, and accepted, from May 1, 1864, to July 1, 1864." In the town-meeting it was "voted to dispense with the fourth article in the warning." At the same meeting it was "voted to pay to men who have been or shall hereafter be drafted from this town, or to the substitutes for such conscripts, the sum of one hundred dollars." On July 8, 1869, the legislature passed an act—Laws of 1869, ch. 126—"to ratify certain votes and acts of the town of Pittsburg." At a legal meeting, held January 26, 1870, the second article in the warrant—which was, "To see if the town will vote to ratify the vote, or article, of the meeting in said town, of July 5, 1864, to pay one hundred dollars to men who were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on said town's quota"—was adopted by a majority vote. *Held,* the town could not, under authority of this vote, pay money to persons who, having been drafted, had neither served in the war nor furnished substitutes, but had paid commutation money instead.

A selectman, who is appointed by his associates collector of taxes to fill a vacancy in that office, is not estopped to allege the invalidity of the warrant and list of taxes committed to him.

FROM COÖS CIRCUIT COURT.

DEBT upon a collector's bond. Trial in the circuit court, and transferred by LADD, J.

The facts of the case sufficiently appear in the opinion by FOSTER, C. J., C. C.

*Dudley* (with whom was *G. A. Bingham*), for the plaintiffs, cited

and commented upon the cases of *Johnston* v. *Wilson*, 2 N. H. 202; *Bath* v. *Haverhill, ibid.* 555; *Faxton* v. *Faxton*, 28 Mich. ——; and *Hagar* v. *Cleaveland*, 36 Md. 476.

*Aldrich & Shurtleff* (with whom were *Hartshorn* and *Fletcher & Heywood*), for the defendants, in support of their views upon the first question involved in the case, cited and commented upon *Foxcroft* v. *Nevens*, 4 Greenl. 72; *Colby* v. *Russell*, 3 Greenl. 227; *Chase* v. *Sparhawk*, 22 N. H. 134; *Gordon* v. *Rundlett*, 28 N. H. 435; *Clark* v. *Bragdon*, 37 N. H. 562; *Copp* v. *Whipple*, 41 N. H. 273; Herman on Estoppel 7, 8, 523; *Davis* v. *Flanders*, 11 N. H. 259; *Guernsey* v. *Edwards*, 26 N. H. 224, 231; Morrison's Dig. 324, *n.* 72; 32 N. H. 172; 41 N. H. 465; 11 N. H. 557; 8 Mass. 79; *Stevens* v. *Dennett*, 51 N. H. 333; Co. Lit., sec. 669, and notes; *Probate Court* v. *Matthews*, 6 Vt. 274; *Wells* v. *Barney*, 4 Vt. 187; *Judge of Probate* v. *Tillotson*, 6 N. H. 38; *City Council* v. *New Plank R. Co.*, 31 Ala. 75, 76.

Upon the second question raised by the case, they referred to N. H. Laws of 1869, 371; *Shackford* v. *Newington*, 46 N. H. 419; *Eddy* v. *Landgrave*, 44 Vt. 467; *Tucker* v. *Aiken*, 7 N H. 126; *Crowell* v. *Hopkinton*, 45 N. H. 9; *Bradford* v. *Newport*, 42 N. H. 338; *Ainsworth* v. *Dean*, 21 N. H. 401; *Rich* v. *Errol*, 51 N. H. 350; Herman on Estoppel, secs. 555–560; *Mayor* v. *Sheffield*, 4 Wall. 489; *Moran* v. *Commissioners*, 2 Black 722; *Gilpeke* v. *Dubuque*, 1 Wall. 203, 291; *Rogers* v. *Burlington*, 3 Wall. 654.

FOSTER, C. J., C. C.[*] The questions before us arise upon the assessment of damages after default in the circuit court.

One Chase was collector of taxes in the town of Pittsburg in the year 1870, and the warrant and list for that year were duly committed to him.

The warrant and list were signed by Calvin J. Danforth and Parker T. Danforth, who were two of the three selectmen. Before January 9, 1871, Chase removed from town, and the defendant—Calvin J. Danforth—was appointed to fill the vacancy occasioned by Chase's removal, his appointment or commission being signed by his two associate selectmen, Parker T. Danforth and F. C. Jacobs; and the bond in suit was thereupon executed.

At that time there was a sum of money remaining uncollected upon the list of taxes which had been committed to Chase, and the same list, and the warrant accompanying it, were handed over to Danforth without alteration; and he has never had any other list or warrant, for the collection of those taxes, than the warrant and list originally committed to Chase.

Danforth proceeded, however, to collect the taxes (no person resisting the payment of his taxes for the reason of any alleged invalidity), and has collected all the amount on the list, except the sum of $141.40.

---

[*] LADD, J., having presided at *nisi prius*, did not sit.

The town seeks to charge him for that sum; and the defendants claim that he cannot be legally held to account for it, by reason of the alleged invalidity of the warrant and list. This issue presents the first question for our consideration.

I. The uncollected taxes ($141.40) should be deducted from the sum of $534.10, with which the plaintiffs seek to charge the collector. His warrant was not sufficient to authorize him to collect taxes which the parties owing them were not willing to pay. Gen. Stats., ch. 53, sec. 8. He is not estopped to deny the invalidity of his warrant.

In accepting the appointment of collector, he did no act in the capacity of selectman. He could not appoint himself; but, like any other citizen, and in a private capacity, he received a legal appointment from the other selectmen. How can he be estopped by their act? What misrepresentation or concealment with knowledge, on his part, has he made, whereby the town or the other selectmen have been induced to change their position? None is suggested. He was appointed, and accepted the appointment and the accompanying list of taxes, on no representation of his own, but on the supposition, by all concerned, that the whole transaction was legal and fair. *Stevens* v. *Dennett*, 51 N. H. 333.

The defendants claim that from the amount collected by Danforth ($1,033.74) should be deducted $300.66, being the amount of three orders drawn by the selectmen in favor of R. W. Danforth and C. H. Sargent, and directed to the town treasurer. If the town is legally liable to pay these orders, they should be deducted from the amount in the collector's hands, and applied for the benefit of the defendants.

Some time before July 5, 1864, Roswell W. Danforth and Charles H. Sargent had been drafted from Pittsburg into the military service of the United States, and to free themselves from such draft had paid commutation money, $300 each. On said July 5, 1864, a town-meeting was held, at which it was voted " to pay to men who have been or shall hereafter be drafted from this town, or to the substitutes for such conscripts, the sum of $100." The fourth article in the warrant for that meeting was " to see what sum of money the town will vote to pay, in addition to the sum already raised, as bounty to all the men drafted into the service of the United States, and accepted, from May 1, 1864, to July 1, 1864." Voted, " to dispense with the fourth article in the warning."

July 8, 1869, the legislature passed an act " to ratify certain votes and acts of the town of Pittsburg." Acts of 1869, ch. 126, page 371.

At a meeting of the legal voters of Pittsburg, held January 26, 1870, the second article in the warrant was " to see if the town will vote to ratify the vote, or article, of the meeting in said town, of July 5, 1864, to pay $100 to men who were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on said town's quota." " Voted on article second in the warrant. Whole number of votes cast was seventy-three [73] ; number of votes in favor of ratifying said article second, or ratifying the votes of said town of Pittsburg, of July

5, 1864, was thirty-seven [37]; and the whole number that were not in favor of said ratification, and voted no, was thirty-six [36]."

The orders in question were given to Danforth and Sargent, on account of their supposed right under said votes, and were for $100 to each of them, and accrued interest thereon. These facts present the second question for our consideration.

II. At a town-meeting in Pittsburg, held July 5, 1864, it was voted " to pay to men who have been or shall hereafter be drafted from this town, or to the substitutes for such conscripts, the sum of $100." At the same meeting the town voted, upon an article in the warrant, to see what sum, in addition to what had been already raised, the town would vote to pay to those men who were drafted and accepted between May 1 and July 1, 1864.

The town voted to dispense with this article, which thereby became a nullity, leaving the action of the town a vote to pay to all who have been or shall hereafter be drafted, or to each substitute for such man, $100.

Now it is manifest that the vote which was adopted, covered and included within the scope of its purport and intention all that was embraced in the article which the town rejected.

The purport of the whole action of the town was, that they would not make any distinction in favor of those who had been drafted and accepted within a specified time, and who had served in person and not by substitutes; but that they would pay to all who had been or might be drafted at any time (whether before or after the first of May or the first of July), or to their substitutes, the sum of $100.

But all this action was ineffectual and without authority, until and unless it should be ratified under the provisions of the act of 1869, by vote of the town at a meeting duly warned for that purpose.

Under this act a meeting was called to vote on the following article in the warrant: " Art. 2. To see if the town will vote to ratify the vote, or article, of the meeting in said town, of July 5, 1864, to pay $100 to men who were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on said town's quota."

Now, whatever the selectmen may have intended by this article, if their purpose was to take the sense of the voters upon the question of the ratification of the vote which was passed, and not of the article which was rejected, they were singularly unfortunate in manifesting such purpose, for, in very distinct terms, they ask the inhabitants to vote whether they will ratify the article which they had previously dispensed with.

Whatever may be understood by the ratification of an article which had been " dispensed with," it might very well be regarded as the suggestion of a reconsideration of the subject-matter of the rejected proposition.

Why did not the selectmen, if they really meant what it may be said they probably did mean, say so in plain and natural terms, like these : " To see if the town will vote to ratify the vote of the meeting,

and ' to pay to men who have been or shall hereafter be drafted from this town, or to the substitutes for each conscript, the sum of $100 ' " ? and, since they did not express themselves in such plain and natural language, may it not be reasonably inferred that the selectmen did mean what they did say ?

The selectmen certainly expressed themselves clearly enough in this latter view of the article, for they specially call the attention of the voters to those men, and only those, who were drafted during the period of two months, between the first day of May and the first day of July.

The object of specific articles in a warrant is, to give information to the voters of the subject-matters to be acted on in town-meeting, that the voters may be enabled to act deliberately and intelligently ; and that the will of individuals may not be subjected to the will of a majority any further than it is subjected by law. *Adams* v. *Mack*, 3 N. H. 498 ; *Torry* v. *Milbury*, 21 Pick. 68.

No doubt the subject-matter being plainly referred to, may properly include authority to act upon minute specifications and particulars included and necessarily involved in that " subject-matter," and which need not be in particular terms enumerated : but in this case the language of the warrant is narrow and restrictive, and, instead of bringing before the voters the subject-matter of their action on July 5, 1864, which was the payment of $100 each to all who were ever drafted from the town of Pittsburg, their attention is directed to and concentrated upon those only " who were drafted from May 1 to July 1, 1864."

Intelligent voters, reading this warrant in the light of its most natural import, might refrain from opposition to the payment of a bounty to those who were drafted within the limited period, although they might be disposed to resist such payment to a greater number of men. See *Child* v. *Colburn*, 54 N. H. 71.

I agree with the position of the plaintiffs, therefore, that in order to avail themselves of this vote, the defendants must show that the parties to whom these orders were given were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on the town's quota. Instead of this, the case shows that at whatever time they were drafted they furnished no substitutes, but paid commutation ; and these orders are in payment therefor. The amount of these orders, therefore, cannot be deducted from the money in the collector's hands.

By the provisions of the case, then, the plaintiffs should have judgment for $451.95.

CUSHING, C. J. It appears, from the statement of the case, that the authorities of the town did not furnish the defendant with any sufficient warrant by which he could collect taxes not voluntarily paid. To the extent that he received taxes voluntarily paid he would undoubtedly be obliged to account and pay over to the town. I cannot see anything which the town has done or forborne to do in consequence of the collector going on as he did, and with the authority which he had ;

neither can I see anything which, under any moral or equitable consideration, makes it right that the defendant should suffer for what was undoubtedly a mistake, for which he was not peculiarly responsible. The other two selectmen undertook to act as a board of selectmen, and to appoint him collector, and he cannot be considered as in any way acting as selectman in that. The mistake was at least as much the mistake of the selectmen as it was that of the collector, and it would be a very harsh, and, I think, unjustifiable application of the law of estoppel to bring this defendant within its operation. I think, therefore, that he is not liable for the uncollected balance of the tax list.

It is conceded that the vote of the town of Pittsburg, July 5, 1864, was beyond the power of the town to pass, and therefore not binding upon the town unless duly ratified under the act of July 8, 1869. The vote of July 5, 1864, was, to pay to men who had been or should thereafter be drafted from the town, or to the substitutes for such conscripts, the sum of $100. This vote is in its terms broad enough to include all persons who were drafted, and freed themselves by paying commutation money.

The article in the warrant for the town-meeting, held under the act of 1869, was as follows, viz., " To see if the town will vote to ratify the vote, or article, of the meeting of July 5, 1864, to pay $100 to men who were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on said town's quota."

This article did not propose to ratify the vote of July 5, 1864, to its full extent; but it did propose to ratify it partially, *i. e.*, so far as it gave $100 each to men who were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on said town's quota.

It appears from the case that this limited ratification of the vote of July 5, 1864, was by no means unanimous, having been passed by a majority of one.

I infer from this, that in 1870 the tax-payers of Pittsburg were not much inclined to ratify the vote of 1864, and that if it had been proposed at the meeting in 1870 to ratify that vote to its full extent, the proposition would have failed. I do not therefore see any reason to suppose that any mistake was made in drafting the warrant for the meeting of 1870. It is more probable that the article was inserted in the form in which it was, for the purpose of limiting the action of the town to a single class of those persons who were embraced in the general terms of the vote of July 5, 1864. The article was probably intended to express the question whether the town would ratify the vote of July 5, 1864, in so far as it paid $100 to men who were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on said town's quota. As Roswell W. Danforth and Charles H. Sargent did not come within the terms of this vote, they were not entitled to the benefit of it. The orders in question therefore were not valid; the town was not obliged to pay them; and the defendant cannot have credit for them in this suit.

SMITH, J.    The plaintiffs claim that the defendant—Danforth—being

one of the selectmen of the town, was bound to see that, as collector, he had a valid list and warrant, and is therefore estopped to deny it.

No legal warrant was directed to him under the hands of the selectmen, and committed to him with the list, as required by Gen. Stats., ch. 53, sec. 8. Consequently he had no power to enforce the collection of the list, nor could he have justified, if sued in trespass for distraining property, or for making an arrest for non-payment of the taxes assessed. Those who paid must have done so voluntarily. The defendant does not refuse to account for all that he has collected; he resists only the recovery of the amount uncollected ($141.40).

The plaintiffs concede that if some person other than one of the selectmen had been appointed collector, he would not have been estopped to show that no legal warrant and list had been committed to him. How does Danforth, because he was one of the selectmen, stand differently? The elements essential to an estoppel by conduct, as laid down in *Stevens* v. *Dennett*, 51 N. H. 333, 334, are wanting. He concealed no material facts, for he had no knowledge of any facts that were not equally known by the plaintiffs, or were not equally open to them to learn. He did not join in his own appointment as collector, and his acceptance could not have misled them. He was no more bound to know that he had no legal warrant than they were. Both parties acted upon the supposition that a legal list and warrant were committed to him; but, with a reasonable use of the means within their reach, the plaintiffs might have ascertained their mistake. A party setting up an estoppel is bound to the exercise of good faith and due diligence to ascertain the truth. *Morse* v. *Brown*, 47 N. H. 499. In the appointment of Danforth he cannot in any sense be said to have represented the town. That was done by his two associates exclusively. He is not estopped to deny that he never had any legal list and warrant, and, as no such list and warrant were ever committed to him, he cannot be charged beyond the amount of taxes collected by him.

As to the other branch of this case, I am satisfied the defendant had no authority to issue the orders, and he cannot therefore be allowed to set off the amount he paid to the holders of them, against the amount collected by him for taxes. There never was any legal vote of the town that authorized the defendant to issue said orders. The town voted, July 5, 1864, " to pay to men who have been or shall hereafter be drafted from this town, or to the substitutes for such conscripts, the sum of $100." This vote was broad enough to include R. W. Danforth and Sargent, who had at some time previous to that date (but when, does not appear) been drafted from Pittsburg into the military service of the United States, and in order to free themselves had paid $300 each, commutation money. But the town at that time had no authority to pass such a vote, and it was consequently wholly void. In 1869 the legislature (ch. 126, 1 Sess. Laws) empowered the town " to ratify and confirm all votes and acts of said town passed and performed at a legal meeting of the inhabitants of said town, on the fifth

day of July, 1864." Under the authority of this statute a meeting of the legal voters was held January 26, 1870, at which it was voted " to ratify the vote, or article, of the meeting in said town, of July 5, 1864, to pay $100 to men who were drafted from May 1 to July 1, 1864, and furnished substitutes to apply on said town's quota." The only vote of July 5, 1864, to which this vote could possibly refer, is the one given above. The fourth article in the warrant for the meeting of July 5, 1864, the meeting had voted " to dispense with." In order, therefore, to entitle Danforth and Sargent to claim the benefit of the vote of January 26, 1870, they must show two things : (1) that they were drafted between May 1 and July 1, 1864 ; and (2) that they furnished substitutes, neither of which facts are shown by the case before us. It does appear that they were drafted prior to July 5, 1864, but how long before does not appear ; and there is no presumption that it was between those dates. It also appears that they each paid $300 commutation money ; but that is altogether a different thing from furnishing substitutes. It is clear, then, that they were not embraced within the terms of the vote of January 26, 1870. The payment, therefore, to them by the defendant of the orders drawn under said vote was unauthorized by its terms, and the defendant cannot set off the amount so paid against the money collected by him upon the tax list.

According to the provisions of the case, the plaintiffs are entitled to judgment for $451.95, with interest from the close of the August term, 1874, of the circuit court.

*Judgment accordingly.*