' SUTTON MANUFACTURING COMPANY *vs.* INHABITANTS OF
SUTTON.

A vote of a town, passed after the St. of 1870, *c.* 196, that the school district system be reestablished, and that the appraisement of the property of the school districts, made in 1869, be the appraisement thereof of 1870, is a reëstablishment of the school districts of the town as they were before they were abolished by the St. of 1869, *c.* 110; and a school district which had united, under the Gen. Sts. *c.* 39, § 42, with a contiguous district in an adjoining town, which had not voted to reëstablish the district system, is revived with the others as a school district of the town, as it was before the union.

A town, at a meeting after the passage of the St. of 1870, *c.* 196, voted to reëstablish the school district system, and that the appraisement of the school district property, made in 1869, should be the appraisement of 1870. At a meeting in the following year, it was voted that an assessment be laid upon the several school districts, as voted at the previous meeting; that the school district appraisement of 1869 should be the appraisement of 1871; and that the treasurer be authorized to convey to the several school districts, upon their payment of the appraised value and insurance, any rights which the town then had in the school-houses. *Held,* that this was a sufficient reappraisement and restoration of the property of the school districts under the St. of 1870, *c.* 196, § 3, to authorize the assessment of a tax on the school districts.

CONTRACT to recover the amount of a tax assessed upon the plaintiffs, which was paid by them under a written protest. The case was submitted to the judgment of the court on agreed facts of which the following are all that are material :

" The school districts in Sutton were abolished by the St. of 1869, *c.* 110. After the passage of the St. of 1870, *c.* 196,* a

---

* " SECTION 1. Any town in which the school district system was abolished by chapter one hundred and ten, or by chapter four hundred and twenty-three, of the acts of the year eighteen hundred and sixty-nine, may, at a meeting called for the purpose, within two years from the passage of this act, by a vote of two thirds of the legal voters, present and voting thereon, reëstablish such school districts.

" SECTION 2. School districts reëstablished under the provisions of the first section of this act shall possess corporate rights and powers, and be subject to liabilities the same as before they were abolished.

" SECTION 3. When any town votes to reëstablish its school districts under the provisions of this act, all school district property appraised and taken under the provisions of chapter one hundred and ten, or chapter four hundred and twenty-three, of the acts of the year eighteen hundred and sixty-nine, which is still in the possession of the town and used for public school purposes, may forthwith be reappraised under the direction of the town and restored to

town meeting was held in Sutton on August 6, 1870, the warrant for which contained the following article : ' To see if the town will vote to reëstablish the school district system, or act or do anything in relation to the same.' Under this article the town voted ' that the vote on the reëstablishment of the school district system be taken by ballot, and those voting in the affirmative will write upon their ballots the word Yes, and those opposed will write upon their ballots the word No ; and that the check list be used in voting.' And the following was the result, ' Yes' 113, ' No' 22. And on motion it was voted ' that the school district property appraisement of 1869 shall be the appraisement of 1870. The property of the several districts had been duly appraised under the St. of 1869, *c.* 110, and possession thereof taken by the town.

" The warrant for a town meeting, March 20, 1871, contained the following articles : ' Article 18. To see if the town will adopt any measures to reappraise any school district property, now or formerly belonging to our school districts, in possession of the town, and to restore the same to the school districts as provided by the act of 1870, *c.* 196, § 3 ; and to see if the town will vote to levy any tax at their next annual assessment upon the school districts, equal to the amount of the appraised value of the property thus to be returned ; and to see if they will divide the public school property among the several school districts, or adjust it in any other manner ; or to act or do anything more, as said act provides.' ' Article 19. To see if the town will authorize their treasurer to release or convey any rights or titles of the town, if any such they possess, to any school district property, real or personal,

---

said districts. And at the next annual assessment thereafter a tax shall be levied and paid into the treasury of the towns, upon each district, equal to the amount of the appraised value of its property thus restored, or the public school property may be divided among the several districts, and adjusted in any other manner agreed upon by the town at a legal meeting ; provided, nothing in this act shall be construed to require an appraisal of school property in towns where the school district property has not been taken, appraised and the value thereof remitted to the several districts as provided by law.

" SECTION 4: This act shall take effect upon its passage."

to said districts, or act or do anything in relation to the same. And upon the articles the following votes were passed : 'Voted, to take up Article 18.' 'On motion, voted, that an assessment be laid at the next annual assessment upon the several school districts, as voted at a town meeting held August 6, 1870, and that the school district appraisement of 1869 shall be the appraisement for 1871.' 'Voted, to take up Article 19.' 'On motion, voted, that the treasurer be authorized to convey to the several school districts, upon the payment of the appraised value and insurance, any rights that the town now has in said schoolhouses.' "

Before and at the time of the passage of the St. of 1869, *c.* 110, a union school district existed, which included a portion of the territory of the town of Sutton and a portion of that of the town of Northbridge, and the school therein was managed alternately by the people of each, and Northbridge has never reëstablished school districts, although the said school has been continued.

If upon these facts the court should be of opinion that the school districts were reëstablished in the town of Sutton, and that all other things have been done by the town to authorize the assessment of a tax upon the school districts under the St. of 1870, *c.* 196, judgment was to be rendered for the defendants, otherwise for the plaintiffs.

*P. E. Aldrich*, for the plaintiffs.

*G. F. Hoar*, for the defendants.

AMES, J. The statute of 1869, *c.* 110, under which the school district system was abolished, did not have the effect of immediately and literally terminating the legal existence of the districts themselves. It was rather the inauguration of a new system, which required some time and some formalities for its adjustment; and partly perhaps for that reason it is expressly provided, by the third section, that the corporate powers and liabilities of the districts shall " continue and remain," for the purposes expressed in Gen. Sts. *c.* 39, § 6 ; that is to say, so far as may be necessary for the enforcement of their respective rights and duties. When the act of 1869 went into effect, it became the duty of each town in which the district system was until then

existing, to forthwith take possession of all the school-houses and other property belonging to the districts respectively, and afterwards to pay the appraised value of the property so taken, by levying upon the town a tax therefor, remitting to the taxpayers in each district the amount of such appraised value; or in each town the difference in value of the property of the several districts might be adjusted in such other manner as might be agreed upon by the parties in interest. Gen. Sts. *c.* 39, § 3. For the purpose of making all these adjustments, it is manifest that each district continued to have a corporate existence.

By the statute of the next year (St. 1870, *c.* 196,) the legislature saw fit to allow each town in which the district system had been abolished to return to that system, provided that at a meeting called for that purpose a vote of two thirds of the legal voters present and voting could be obtained in favor of so doing. The mode in which this reëstablishment of the former system was to be accomplished was by reappraisement, and restoration to each district, of the property which the town had taken from it under the previous statute, and the readjustment of the tax thereby rendered necessary for the indemnity of the town in consequence of such reconveyance of property. It is true that the more recent statute does not in terms authorize the towns to submit to the voters the specific question whether they will reëstablish the district system; and that the precise expression of the statute is, that any town may, upon certain terms, vote to reëstablish school districts. But the two statutes are upon the same subject matter, and are to be construed in connection with each other. The manifest purpose of the legislature was to allow any town, that might see fit to do so, to return to the old order of things, and place itself in the same position in which it stood before the first of the two acts was passed. The only mode in which it was possible for any town to reëstablish the district system, and to secure the reconveyance of property, which was to replace the matter in its former position, was that provided for in the statute of 1870; and in voting to reëstablish the old system the town may fairly be considered as intending to revive or recognize the former districts. Otherwise the vote would be wholly ineffectual for any

purpose. The district system implies and means the subdivision into districts; and the reëstablishment of the system after the new statute had taken effect would have the effect to reëstablish the subdivision as it was before. The vote of a town is not to be construed with the strictness of an indictment or penal statute, and we think that by the vote in question the town reëstablished the previous districts, within the meaning of the statute. The article in the warrant was " to see if the town will vote to reëstablish the school district system, or act or do anything in relation to the same." Under this article the vote was, not only to reëstablish the system, but also to agree to the valuation of the district property, — a vote which recognizes the former districts and implies their continuance.

It appears by the report, that one of the districts in the defendant town had united with a contiguous district in the adjoining town of Northbridge, in pursuance of the provisions of Gen. Sts. *c*. 39, § 42 ; and that the latter town has never voted to reëstablish the district system. We do not see that this fact makes any material difference in the case. The Sts. of 1869, *cc*. 110, 423, undoubtedly dissolved this union, but so much of the united district as lies within the limits of the town of Sutton returns to its former position and character as one of the school districts of that town, and is of course revived, with the others, by the vote of that town to return to the ancient system. The special provisions of the St. of 1869, *c*. 423, as to the appraisement and division of property, and the payment for such property taken by the town, appear to be sufficient to meet the case of districts of that peculiar character.

The other objections to the tax assessed appear to us to be also untenable. The vote of the town that the appraisement of the school property of the year 1869 shall be the appraisement for the year 1870 was equivalent to a reappraisement. It was a formal adoption of certain figures, in dollars and cents, as the valuation at which they were willing to reconvey the property to the districts respectively. The vote that the assessment be laid upon the districts, " as voted " at a former town meeting, can only be interpreted to mean, under the circumstances, upon the valuation

and in accordance with the policy or general determination of the town adopted at that former meeting. As it must be assumed that the use of the school-houses and other property is restored to the districts, we do not see that the terms of the vote, as to the reconveyance of the legal title to them, can be said to conflict with the provisions of the statute, which substantially leaves the division and mode of adjustment very much to the discretion of the town.                         *Judgment for the defendants.*