NAHUM A. CHILD *v.* GEO. E. COLBURN, WM. P. BACON, M. H. FISK, AND —— HEALD.

An act of July 2, 1870, ch. 8, entitled "An act enabling towns to abolish school districts in certain cases," gives authority to towns at any time to abolish the school districts therein, and constitute the town a single district; thereupon a board of education is required to be elected, at the annual town-meeting in March; if the town neglects to elect such board, the selectmen may appoint. The act only takes effect in such towns as by vote, at a legal meeting, shall adopt its provisions.

Under an article in a warrant calling a town-meeting "To see if the town will vote to redistrict its school districts, or what action they will take in relation thereto," a town cannot legally vote to adopt the provisions of the foregoing act, and thus abolish the school districts therein.

A vote to indefinitely postpone an article in a warrant "To see if the town will reconsider their action relating to the appointment of agents, under the law of New Hampshire, entitled 'An act to abolish school districts in certain cases,' and return to the old school-district system," cannot have the effect to ratify the invalid action by which the town undertook, in the manner before stated, to abolish their school districts.

A legal vote to adopt the provisions of the before-mentioned act, abolishes *ipso facto*, and immediately, the then existing school districts.

Such a vote was passed in May, in the town of T.   Prior to that time the act aforesaid was not in force in that town.   The failure of the town to elect a board of education at the previous March, when only by the provisions of the act such election could be made, was not the neglect contemplated by the act, which would authorize the selectmen to appoint a board of education after the passage of the vote in May.

PETITION FOR A MANDAMUS, preferred by Nahum A. Child, of Temple, who represents that he is an inhabitant of school district No. 5, in that town, and that, at a legal meeting in said district, in March, 1873, he was chosen and qualified as prudential committee of the district; that at the annual town-meeting, in March, 1873, the defendants, Colburn and Bacon, with one Cutter, since deceased, were chosen and qualified as selectmen; that at the same meeting the town raised $600 for school purposes, which sum should have been assessed, collected, and apportioned to the several school districts, but the selectmen have neglected and refused to apportion the money thus raised, or any school money; that at the annual town-meeting, in March, 1873, under an article in the warrant " To see if the town will vote to redistrict its school districts, or what action they will take in relation thereto," the town voted to adopt the provisions of the laws of 1870, ch. 8, and also voted that the selectmen appoint a board of education; that by virtue of this authority the selectmen subsequently appointed the defendants— Fisk, Heald, and Bacon—as such board, who have since assumed to act in that capacity by virtue of the authority thus conferred, and the additional appointment of the same defendants at a town-meeting on the 5th of May.

The petitioner insists that the school districts have not by any legal action of the town been abolished; that the selectmen should have appointed a superintending school committee and apportioned the school money, and that even if the school districts could be regarded as abolished, no board of education has been legally appointed or chosen.   And he prays that the defendants, Colburn and Bacon, be required to appoint either a superintending committee or a board of education, and also to apportion the school money to the several districts; that they be forbidden to pay over any of said school money to said Fisk, Bacon, and Heald; and for such other relief as may be just.

All the facts alleged in the petition, independent of legal conclusions, are admitted by the defendants, who also inform the court, by their answer, that the said board of education, having being legally constituted, as they believe, have caused schools to be kept in different parts of the town, as required by law, and thereby have already expended, in good faith, a large portion, to wit, $500 of said $600 raised by the town for school purposes,—having received said sum of $600 from the selectmen, those officers, as well as the members of the board

of education, supposing and believing that their action was legal and proper.

*Marshall & Chase*, for the defendants.

The petitioner is not entitled to the writ he prays for, and therefore the petition should be dismissed.

1. Because the petitioner has no such private interest as entitles him to this writ. "To obtain relief by this process, the applicant must not only show a specific legal right, but there must not be any other remedy adequate to enforce that right." *School District No. 8 in Sunapee* v. *Perkins*, 49 N. H. 538. "A private individual can only have this remedy in those cases where he has some particular interest to be subserved, or some particular right to be protected by the aid of this process, independent of that which he holds in common with the public." *Sanger* v. *The County Commissioners*, 25 Me. 296; *Williams* v. *The County Commissioners*, 35 Me. 347; *Hall* v. *Selectmen of Somersworth*, 39 N. H. 517. The duties of the petitioner, as prudential committee—supposing him to have been legally elected as such—are prescribed by statute, and he has no authority except such as is thereby conferred. Gen. Stats., ch. 89, sec. 14; *Wilson* v. *School District*, 32 N. H. 127; *School District* v. *Currier*, 45 N. H. 573. The petitioner asks that the selectmen may be ordered to apportion and assign the school money to the several districts, and the appointment of a school committee in the town. In these matters he has no interest, except such as he holds in common with the other citizens of the district and the town. The district may have rights which may be enforced by the aid of this writ, but it must be done in the name of and for its use.

2. Because the statutes provide an adequate legal remedy, "if the selectmen neglect to assess, assign, or pay over the school money" to the several school districts of the town. Gen. Stats., ch. 77, sec. 6. But this remedy is by the prudential committee, in the name and for the district, and not in the name of the prudential committee. The court will not issue this writ to effect purposes which may be obtained by ordinary legal remedies—*School District* v. *Perkins*, before cited—and "except where there is no other adequate remedy." *Carpenter* v. *The County Commissioners of Bristol County*, 21 Pick. 259. Where there is a right, and the law has established a specific remedy, this writ should be denied. *The Proprietors of St. Luke's Church in Chelsea* v. *Slack*, 7 Cush. 239. The authorities upon this point seem to be conclusive.

3. Because, as this writ is not of right, but is issued in the discretion of the court, the court will not grant it unless some just and useful purpose is to be answered thereby. Angell & Ames on Corp., page 694, sec. 698. *The People* v. *The Supervisors of Westchester County*, 15 Barb. 607. No just or equitable purpose will be answered in this case by granting the writ, even if it would avail anything. It appears from the petition, that the town raised $600 for schools at its last annual

meeting ; and from the evidence of the defendants, that said sum has been assessed and collected, and, prior to January 7, 1874, $444.70 had been expended for schools in the town ; and that schools were then in operation which would require $137.50 more. It also appears that the schools have been successful, and that the children of the town have had more and better schooling, and that the money has been more equitably and justly distributed than heretofore. The court will not therefore accomplish any useful purpose by interfering with the present school system in the town, and we think they will not unless they are compelled to do so by some legal necessity.

4. Because the court will deny this writ, when, if granted, it would be wholly unavailing. *Woodbury* v. *The County Commissioners*, 40 Me. 304, before cited ; *Howard* v. *Gage*, 6 Mass. 462 ; *The People* v. *The Supervisors of Greene County*, 12 Barb. 217, and 15 Barb. 607, before cited. The cases cited fully sustain our position, and the facts therein were in many respects like those in the case under consideration. The office and official duties of the defendants terminate by limitation at the close of the present political year, and before this cause comes on for hearing and decision. The defendant selectmen will then have no control over the school money of the town, or authority to appoint a superintending school committee, and a writ of mandamus, therefore, directing them to apportion the school money, or to appoint a school committee according to the prayer of the petition, would be entirely nugatory and unavailing. In 15 Barb., cited before, the court say,— " The rule is well settled, that a writ of mandamus will not be granted where it will be unavailing from a want of power in the defendants to perform the required duty." This rule is fully sustained by the authorities cited.

5. Because the town of Temple, at its annual meeting in March last, legally adopted the act, and the provisions thereof, of ch. 8 of the Pamphlet Laws of 1870, and thereby abolished the school districts. The town then voted to adopt its provisions ; and the principal question is, Was the article in the warrant relating to school districts sufficient under the statute to render the action of the town valid ? The article was, " To see if the town will vote to redistrict its school districts, or what action they will take in relation thereto." " The subject-matter " to be acted upon under this article was school districts and a change thereof ; and it was distinctly stated, in strict compliance with the provisions of the statute in relation thereto. Gen. Stats., ch. 35, sec. 2. No one could fail to understand that some action was intended in relation to school districts. The statute does not provide " how specific the articles of the warrant shall be," but " they must contain the intent and design of the meeting, and the subject-matter of all the business to be considered and done." *Tucker* v. *Aiken*, 7 N. H. 125. The article in question gave notice that the limits of the districts might be changed by redistricting, and hence that the number might be reduced even to one. *Converse* v. *Porter*, 45 N. H. 395. In that case the court held that, under an article in the warrant " To see if the town

will alter the boundaries of any of the school districts in town," two school districts could be legally united, and apparently found no difficulty in coming to that conclusion; hence, we think, the court will find no difficulty in coming to the conclusion in this case, that the article in question was sufficient to warrant the action of the town to the extent of making one district of the town, by adopting the provisions of said act, ch. 8 of P. L. of 1870. *Baker* v. *Shepherd*, 24 N. H. 208, fully sustains our position.

We are sustained by the law, and, in addition thereto, by equity and a proper regard for the welfare of the town. It will appear, from the copies of the warrants and records of the meetings—which are used by agreement—that a meeting of the town was held April 12, 1873, and that the town then refused to reconsider its action at the annual meeting; and that another town-meeting was held May 5, 1873, and that the town reaffirmed its action at the annual meeting in relation to the adoption of said act, and elected a board of education in accordance with its provisions. The action of the town in both these meetings shows conclusively that the town desired to have the town one school district, and understood that, by adopting the provisions of said act, the school districts were abolished. The selectmen, and the board of education appointed by them, so understood it, and have collected and expended the school money in a just and reasonable manner, as before stated. The petitioner admits, in substance, in his petition, that he understood the adoption of the act abolished the districts, because he prays that the selectmen may be ordered " to appoint a superintending school committee or a board of education, as the case may be."

It is clear that the legislature, by the act in question, intended to give to the towns of this state the right to substitute one corporation for several school district corporations, for school purposes; and it is left to the election of the towns to exercise this right, and thereby adopt the one corporation, or to retain the several corporations.

In this case the town undertook to comply with the provisions of the act, and make one corporation of the town, and at its last annual meeting adopted the provisions of the act, and thereupon the act took effect and became in force in the town, according to its express provisions—Pamphlet Laws, ch. 8, sec. 6. The effect of its adoption, if it had any, was to abolish the several school districts, and to substitute the one therefor; or, in other words, it was to repeal the several old charters by the adoption of the new. We think the court will find no difficulty in coming to the reasonable conclusion that the act is now in force in the town, and that the result of its being in force is to abolish the school districts. If the court comes to the conclusion that the act was legally adopted at the annual meeting and then became in force, and that the effect thereof was the abolition of the school districts, they will hold that the town neglected to choose a board of education, and, therefore, that the board of education was legally appointed by the selectmen, on March 19, 1873. The fact that the town has taken possession of the school-houses and other property of the districts, but

has not had them appraised, does not and cannot affect the conclusions to which we ask the court to come.

There are some other questions which might be properly considered, and may be hereafter, but we think we have suggested sufficient reasons why the prayer of the petitioner should be denied.

*Charles R. Morrison,* for the petitioner.

I. The most important question is, whether the school districts in the town of Temple have been abolished. The question arises under the act of July 2, 1870, entitled "An act enabling towns to abolish school districts in certain cases."

Section 1 provides that any town may at any time abolish the school districts therein, " and shall thereupon forthwith take possession of all the school-houses, land, apparatus, and other property owned and used for school purposes, which said districts might lawfully sell or convey;" and that the property so taken shall be appraised, and a tax levied upon the whole town therefor, &c.

Section 2 provides that when any town which has been divided into school districts shall have abolished them, it shall be considered as one district, and have all the powers and liabilities of the same.

Sections 3 and 4 provide that " such towns shall, at their annual town-meeting in March, elect a board of education; and should any town neglect to choose such board, that the selectmen shall, on or before April 20 ensuing, appoint."

Section 5 continues the separate existence of the former districts for certain purposes.

Section 6 is as follows: " This act shall take effect and be in force only in such towns as by a vote at a general meeting shall adopt its provisions;" and section 7 repeals all acts inconsistent with this act.

These are all the provisions material to the present inquiry, which is, whether the school districts were abolished at the annual town-meeting, under an article in the warrant " To see if the town will vote to re-district its school districts, or what action they will take in relation thereto." The town at that meeting voted to adopt the act of 1870.

Deferring for the present any discussion of the effect of a legal adoption of the act, we say that there could be no legal vote of adoption under such a warrant.

*Tucker* v. *Aiken,* cited by the defendants' counsel, was decided in 1834, under the act of June 28, 1828, which required the selectmen to insert in the warrant for any town-meeting " the subject-matter of all business, matters, and things to be considered and done at said town-meeting, without otherwise stating how specific the articles must be. But sec. 2 of ch. 35, Gen. Stats., is identical with sec. 2 of ch. 32 of the Revised Statutes of 1842, which provides that " the subject-matter of all business to be there voted upon shall be distinctly stated in the warrant, and nothing done at any meeting shall be valid unless the subject thereof is so stated." By the insertion of the word " distinctly "

(which is not to be found in the act of 1828), it was obviously intended to require more than had been held to be essential under the previous statutes, and to forbid the transaction of any business not coming within the plain and obvious meaning of the warrant. It is not enough that the language may admit of a construction that would warrant the vote ; it must naturally and obviously and to common apprehension embrace the subject-matter acted upon. "Distinct," says Dr. Webster, "means so separated as not to be confounded with any other thing; clear, not confused."

Now no one, having no knowledge of the subject but from the warrant, would clearly understand, or even be likely to conjecture, that, under an article "To see if the town will vote to redistrict its school districts, or what action they will take in relation thereto," it might be called upon to vote upon the question of abolishing all the districts. To redistrict is to district anew. To abolish all the districts without substituting others in their place, is not to redistrict, upon any fair use of terms ;—most certainly such an article as the one in question could give no " distinct " information of any such contemplated action, which is what the statute requires. But this is not all: to abolish all the districts in not necessarily to adopt the act of 1870, for there is ample power to abolish them by sections 1 and 2 of the General Statutes.

The vote at the second meeting was to adopt the act of 1870. But there was no article in the warrant touching that subject. The article as to redistricting would have been insufficient for such a vote, even under a statute no more explicit than the act of 1828; and to uphold it as sufficient under the present law would be a virtual repeal of the statute.

II. The character of the warrant for the meeting of April 12 is immaterial, as all the articles were indefinitely postponed.

III. The town did, on May 5, under an appropriate article for that purpose, vote to adopt the act of 1870. It did not vote to abolish the school districts, and there was no article in the warrant upon that subject. It chose certain persons as a committee, not as a "board of education ; " but there was no article in the warrant relating to that business.

To adopt the act of 1870 was not thereby to abolish the districts. The adoption of the act by the town was but clothing itself with authority to do, at the proper time, the various things which towns that have adopted the act are empowered to do. It makes the act, as to the town of Temple, operative the same, and only the same, as if the sixth section had been omitted from the act. The authority to abolish, and the exercise of that power, are as distinct in their nature as the authority to choose a board of education, and the choosing of them. The town, upon a proper warrant, could adopt the act at any season of the year ; but, by the third section, it could choose the board only at the annual meeting. And so it could adopt the act, and then at the same or at any subsequent meeting, upon a sufficient warrant, abolish the districts and take possession. Having adopted the act, it still had a

discretion whether to abolish the districts or not. It could stop short of that, and take time to consider. But if it does abolish the districts, then, by the express language of section one, it "shall thereupon" forthwith take possession of the property, and a tax must be imposed for it; but no such obligation is imposed by merely adopting the provisions of the act.

The language of sections 2 and 3 is not that towns which have adopted the act shall be one district, and may at their annual meeting elect a board of education, but towns which have been divided into school districts shall have abolished them; and the different subjects are as distinct and separate in the act itself as they are in their own nature.

There was no article in the warrant to see if the town would abolish its school districts; but if there had been such an article, as well as an article as to the adoption of the act, the opponents of the whole project, if defeated upon the adoption of the act, might by further argument, or the presence or absence of voters changing the result, be able to defeat the other articles, and would have a clear parliamentary right to do it. But then, a vote not to abolish the districts would not rescind or legally affect the vote of adoption, and render a new vote to adopt necessary.

To be sure, if there had been articles relating to both subjects, it is probable that both would have been carried. But what of it? We cannot know that the vote to adopt could have been carried at all, or if carried, that it would not have been reconsidered, but for the fact that there was no article under which the town could vote to abolish the districts, and no attempt to pass any such vote, which, if passed, would make the immediate taking possession of the property of the districts imperative.

The question is not what the town might have done under a proper warrant, but what has it done? And there can be no good reason why the court should dispense with the statute, if it could do so, as it cannot.

With a statute before them, so plain that he "who runs may read," there is no excuse for a series of blunders, of which the selectmen should be ashamed. Did they not know that the statute required that the business to be acted upon should be distinctly stated in the warrant? If it was intended to bring the question of the acceptance of the act of 1870 before the annual meeting, why was there no article except as to redistricting? But if it was intended to bring the question of abolishing the districts (which would necessitate the immediate taking of possession, followed by an appraisement and the assessment of a tax) before the meeting of May 5, why was there not a distinct article in the warrant to that effect? It may be that the projectors of the movement were well aware that a majority of the town were not ready to take any step that would render compliance with the requirements of section 1 of the act of 1870 imperative; for it appears that there has been no attempt to perform the required acts by taking

possession and making an appraisal, and that the bare vote to adopt the act was carried by a small majority, and one half the town not voting.

The one-district system, with a board of education, may be a very good thing for the town of Temple, but we doubt it.  It seems to have been a good thing for the board of education, and their wives and sisters, who, with or without certificates, have perambulated the town, while some of the children have been schooled in private houses, and some sent out of town.  It may be a very beneficial system for the town as a whole, but there is room for a difference of opinion, to say the least.

It will be time enough to sustain it when it has been adopted and made effective in the manner prescribed by law.  See *Railroads* v. *Peterborough*, 49 N. H. 281, 294; *Neal* v. *Lewis*, 46 N. H. 276; *Rollins* v. *Chester*, 46 N. H. 411; *Lisbon* v. *Bath*, 21 N. H. 319; *Butler* v. *Selectmen of Pelham*, 19 N. H. 553; *Stone* v. *School District*, 8 Cush. 592; *Rideout* v. *School District*, 1 Allen 232; *Mundell* v. *Marion*, 16 Greg. 353.

IV.  A mandamus is the appropriate remedy, and no other is adequate.  *Hall* v. *Selectmen of Somersworth*, 39 N. H. 511; *Butler* v. *Selectmen of Pelham*, 19 N. H. 553; *Kimball* v. *Lamprey*, 19 N. H. 225.

The defendants had power enough to comply with the writ at the time the petition was filed, and by their delay should not prevent a decision of the case.  The order can be made as of the January term, if necessary, when we desired to go into the argument.  The evidence taken discloses no new facts of any importance to the decision.

FOSTER, J.  The determination of this case depends upon the validity and effect of the proceedings of the voters of the town of Temple, in the effort of a majority of them to abolish the school districts in the town, and avail themselves of the privileges conferred by the act of July 2, 1870, ch. 8, entitled "An act enabling towns to abolish school districts in certain cases."

This act, in its first section, provides that any town may at any time abolish the school districts therein, " and shall thereupon forthwith take possession of all the school-houses, land, apparatus, and other property owned and used for school purposes, which said districts might lawfully sell or convey," and that the property so taken shall be appraised, and a tax levied upon the whole town therefor, &c.

Section 2 provides that when any town which has been divided into school districts shall have abolished them, it shall be considered as one district, and have all the powers and liabilities of the same.

Sections 3 and 4 provide that " such towns shall, at their annual town-meeting in March, elect a board of education," and should any town neglect to choose such board, the selectmen shall, on or before the 20th of April ensuing, appoint.

Section 5 continues the separate existence of the former districts for certain purposes.

Section 6 is as follows: " This act shall take effect and be in force

only in such towns as by a vote at a legal meeting shall adopt its provisions ; " and section 7 repeals all acts inconsistent with this act.

These are all the provisions material to the present inquiry.

Under an article in the warrant, calling the annual March meeting in 1873, " To see if the town will vote to redistrict its school districts, or what action they will take in relation thereto," the town of Temple, at that meeting, voted to adopt the provisions of that act ; and the principal question now presented is, Was the article in the warrant, relating to school districts, sufficient under the statute to render the action of the town valid ?

The General Statutes, ch. 35, sec. 2, require that the subject-matter of all business acted upon at any town-meeting shall be distinctly stated in the warrant, and nothing done at any meeting shall be valid unless the subject thereof is so stated.

In *Tucker* v. *Aiken*, 7 N. H. 113, it was held that an article in the warrant, " To see what sum of money the town will vote to raise for the support of schools, of the poor, repairing bridges and highways, for the payment of the just debts of the town, and *for other legal purposes*," states with sufficient precision the subject-matter to be acted on under it ; and per PARKER, J., "if the article had been in terms ' for the payment of town charges,' or, with still greater particularity, ' for the payment of the town officers and all other necessary expenses for which the town may be liable,' the inhabitants would have had no more precise and definite information of the subject-matter than they had by the article as penned." " It is nowhere enacted how specific the articles of the warrant shall be, further than this : they must contain the intent and design of the meeting, and the subject-matter of all business to be considered and done. If the article under consideration gives information of the subject-matter to be acted on, there was a compliance with the provisions of the statute ; and we think there can be no doubt of this." 7 N. H. 125, 126.

But it is said by the petitioner's counsel that there is a material difference between the requisitions of the statute interpreted in *Tucker* v. *Aiken* (namely, the act of June 28, 1827, Laws, ed. of 1830, page 441), and the provisions of the General Statutes applicable to the case before us. It is claimed, because the former act merely required that the selectmen should insert in the warrant the intent and design of the meeting and the subject-matter of the business to be done, while the present law requires that the subject-matter shall be *distinctly* stated, that a greater degree of precision in stating the nature of the business to be acted upon is required now than was required in the days of *Tucker* v. *Aiken*.

We think, however, that nothing is added to the force and intent of the former law by the terms employed in the later enactment. The former law doubtless intended, equally with the present, that the article should be expressed with sufficient precision to give the people definite information of the subject-matter to be acted on. It was so regarded by the court in *Tucker* v. *Aiken ;* and we are at a loss to see how any-

thing more can be required or expected under the terms of the present law than that the people shall have " definite information of the subject-matter to be acted on." By the terms of the article in question, the people were notified that the subject-matter to be considered at the meeting was the redistricting of the school districts in the town.

The first clause of the article, taken by itself, is, " To see if the town will vote to redistrict its school districts." Under this article the town voted " That the town adopt the provisions of Pamphlet Laws of 1870, ch. 8, page 409," and " that the selectmen appoint the board of education."

Now, the act of 1870 has no reference whatever to any such subject-matter as is expressed· in this warrant,—that is, the redistricting of the school districts; it relates solely (as its title imports) to the entire abolition of school districts and the school district system, and the substitution of a board of education for the superintending and prudential committees required by that system.

We do not think the town could legally pass these votes under this warrant. It is true that, under an article in the warrant " To see if the town will alter the boundaries of any of the school districts in town," two districts may be united. *Converse* v. *Porter*, 45 N. H. 395. But there is no analogy between such a case and the present. The court there hold no more than this, per BELLOWS, J. : " The article certainly gives notice that the limits of any and every district may be acted upon and altered ; and under that it would seem, according to *Perkins* v. *Langmaid*, 34 N. H. 321, that existing districts might be united, and, if so, clearly the limits of all might be altered and defined." Now, although this may be all very well as a proceeding under the provisions of the law which enables towns to *alter* the limits of school districts—Comp. Stat., ch. 73, sec. 2—and although the practical effect may be to incorporate the whole town into one district, still, we apprehend that, whether under an article like that in *Converse* v. *Porter*, " To see if the town will alter the ·boundaries of any of the school districts," or under the present article, " To see if the town will vote to redistrict " (which means, clearly, to *district anew*, and at all events, therefore, in some form to preserve the district system), it would be impossible to hold, that authority was conferred to *abolish* all the districts, and to provide for a system and a board of officers not recognized or contemplated by the law, prior to the act of 1870.

It is very manifest that the article in question does not *distinctly* state the subject-matter of the business to be voted upon. We can hardly suppose that a voter, ignorant in fact of what was contemplated, would ever imagine, by reason of any information conveyed by this warrant, that the subject-matter of the business to be acted upon was the abolition of the school districts and the adoption of the act of 1870.

For want, therefore, of requisite precision in the statement of the article in the warrant, the proceedings of the town-meeting must be regarded as invalid. It is hardly necessary to remark that the last clause of the article, in its extremely vague and indefinite character,

adds nothing to the validity and effect of the former, or of any portion
of it.

At a legal meeting, held April 12, 1863, under an article in the war-
rant " To see if the town will reconsider their action relating to the
appointment of agents under the law of New Hampshire, entitled ' an
act to abolish school districts in certain cases,' and return to the old
school district system," the town voted that the article be indefinitely
postponed.   This action was of no effect whatever.   It may be an indi-
cation of the opinion of that meeting that the act of 1870 had been
adopted, but it cannot, by any *quasi* ratification, legalize the invalid
action of the annual March meeting.

On the fifth of May, at a legal meeting, under an article in the war-
rant " To see if the town will adopt the act of the New Hampshire
legislature, entitled 'An act enabling towns to abolish its school dis-
tricts in certain cases,' and found in the Pamphlet Laws of 1870, page
409, and chapter 8," the town " voted in the affirmative, 26 to 22," and
then proceeded to choose a board of education.

By the sixth section of the act of 1870, the act is made to take effect
in such towns as by vote at a legal meeting shall adopt its provisions.
This act, then, *took effect* on the fifth of May, and its effect was the
abolition of the school districts.   It could " take effect " in no other
way.

The purpose and intention were to give the adoption of the act the
effect of such abolition.   The first section of the act, in its first line,
contains the entire provision of the law with regard to the change of
the system of education in the town : all the rest of the act is
merely directory of the manner in which the new system shall be
operated.   Section first begins with these words : "Any town may
at any time abolish the school districts therein."   And when the
town voted to adopt this provision of the law, the districts were
*ipso facto* abolished.   It would have been supererogatory to have voted
in express terms to abolish the districts, after the town had voted to
adopt and thereby give effect to an act which could have no *other* effect
than to abolish the districts.   *Sutton Manf'g Co.* v. *Sutton,* 108 Mass.
106 ;  *Perkins* v. *Crocker,* 109 Mass. 129.

We think no voter, who could read and understand the statute law,
as all are supposed to do, could have been deceived by the terms of the
article in the warrant, or have failed to understand that to vote affirm-
atively upon it was to vote for the abolition of the school districts.

To our apprehension, " the subject-matter of the business to be voted
upon " was " *distinctly* stated in the warrant " with sufficient specifica-
tion and precision.

Section 1 provides that a town, having abolished the school dis-
tricts therein, " shall thereupon forthwith take possession of all the
school-houses, apparatus, and other property owned and used for school
purposes," &c., which property shall be appraised, &c.   Now, it does
not appear that any attempt has been made to take such possession or
make such appraisal ; but this provision of the law is directory merely,

and is not a condition precedent or a proviso, without which the law either does not take effect or ceases to be in force.

But the town clearly exceeded its powers in the attempt to elect a board of education at the meeting on the fifth of May. Such election, by the express terms of the act, can take place only " at the annual town-meeting in March."

The action of the town-meeting on the fifth of May could not by retrospective effect give validity to the proceedings of the previous annual meeting, under which alone the selectmen have attempted to exercise the power conferred by section 4 of the act of 1870, of appointment of a board of education by their vote of the nineteenth of March. The act of 1870 was not then in force. It follows that there is not and has never been a board of education in the town of Temple, under the act of 1870; and whatever has been done by the defendants, assuming thus to act, although done in good faith, was wholly unauthorized and void.

The petitioner prays that the selectmen be commanded to appoint a superintending committee or a board of education, and also to apportion the school money to the several districts, and that they be forbidden to pay over any of said school money to the said Fisk, Bacon, and Heald. But we have seen that by the terms of the law it is only in the case of the failure of the town to elect a board of education " at their annual town-meeting in March," that the selectmen can be required to appoint such a board.

They cannot be required to apportion the school money to the several districts, nor to pay it over to the said Fisk, Bacon, and Heald, for two good and sufficient reasons: first, the districts having been abolished, there is no more than one district in town; that, of course, is not the fifth district, whose representative in this proceeding the petitioner is; second, it would be idle to forbid the selectmen to pay over the school money to Fisk, Bacon, and Heald, because these gentlemen received the whole of it long ago, and have expended the greater portion of it.

*The petition for a mandamus must therefore be dismissed.*

Whether the petitioner or any other inhabitant of Temple may have any different remedy for his alleged grievances is not a question before us. The result indicated by the views herein expressed is, that, although the action of the town in this matter has been in the main but a series of blunders on account of which the petitioner has no remedy by virtue of this writ, still, the act of 1870 is now in force in the town, and its very simple machinery may probably now be put in operation, with what degree of advantage or detriment to the educational interests of the inhabitants remains to be seen.